## SOUTHEAST TEXAS

**JEFFERSON CO., TX PROPERTY**
16-Active Wells. 618-Acres.
SPINDLETOP FIELD
Deeper Nodasaria Gas Play.
30-Additional Drilling Locations.
Numerous Behind Pipe Zones.
100% OPERATED WI; 73% NRI
Gross Production: ~155 BOPD
Net Production: ~110 BOPD
Net Cash Flow: ~$300,000/Mn
Est Net Proved Reserves: 4.1 MMBO
P+P+P Reserves: 4.77 MMBO & 6.5 BCF
Net Proved Rsrvs (PV10): $156,000,000
**PP 1527DV**

**PP ~110 BOPD**

**LIBERTY CO., TEXAS PROPERTY**
6-ShutIn Wells.
DAYTON NORTH FIELD
Depths: 3,000-6,000 Ft. (TD)
100% OPERATED WI FOR SALE
Estimated ShutIn Prod: 10-20 BOPD
**PP 3544**

**PP SHUT-IN**

**LIBERTY CO., TEXAS PROPERTY**
1-Producer. 3-Shut-In.
SOUTH LIBERTY OIL FIELD
Depth: 4,000 Ft. (TD)
100% OPERATED WI FOR SALE
Gross Production: 4 BOPD & 5 BWPD
**PP 3545**

**PP 4 BOPD**

**SOUTHEAST TEXAS PROPERTY**
1-Producer. 7-ShutIn. 1-Injection Disposal
HARDIN & POLK COUNTIES
VOTAW OIL FIELD
Wilcox Formation. 8,500 Ft.
OPERATED WI FOR SALE
Gross Production: 6-8 BOPD
Estimated ShutIn Prod: 35 BOPD
**PP 3542**

**PP 8 BOPD**

**SOUTHEAST TEXAS SALE PACKAGE**
2-Active. Contiguous 2,684-Acre HBP Unit.
GRIMES CO., TEXAS - ZINGARA UNIT
POTENTIAL IN OVERLAPPING PLAYS
Glen Rose & Georgetown. 8,500-12,500'
On Trend w/ Austin Chalk, Woodbine -
''Eaglebine'', Dexter Sands, Eagle Ford,
Buda, Edwards, Georgetown & Glen Rose.
100% OPERATED WI; 74% NRI
30-Day IP: 480 BOPD & 380 MCFD
EUR (Woodbine): 285 MBO & 307 MMCF
Drill & Completion Capex: $6,000,000/Well
**PP 3125DV**

**PP 80 MCFD**

**TYLER CO., TEXAS PROPERTY**
3-Shut-In Wells.
HOUSH OIL FIELD
Depth: 8,800 Ft. (TD)
100% OPERATED WI FOR SALE
Estimated ShutIn Prod: 18 BOPD
**PP 3546**

**PP SHUT-IN**

## What's on the Market

### Northern Midland Basin foothold opportunity for sale

**Bold Energy II** and **Sinclair Oil & Gas** are marketing operated acreage in the northern Midland Basin.  Located in Borden and Garza Cos., Texas, the leasehold covers 22,300 net acres (29,600 gross) with rights to all depths and at least seven years remaining on primary leases.  Stacked targets include the Clearfork, Spraberry, Wolfcamp A, B and D (Cline), Strawn and Atoka.  The leases average 77.4% NRI.



Five active producers provide gross March oil flow of 17 bopd with produced water volumes of 165 bpd.  Also included are two injectors and one saltwater disposal well permitted for up to 10,000 bpd.  Offset operators include **Apache, Athlon Energy, Element Petroleum, SM Energy** and **Tall City Exploration.**

To learn more about this opportunity, see **PLS Listing No. DV 5463L** or contact **Lantana Energy Advisors, A SunTrust Robinson Humphrey Company**.

### Conventional Permian oil assets for sale in Andrews County

Permian-focused **Lime Rock** portfolio company **Capstone Natural Resources** is selling operated oil properties on the Central Basin Platform via **RBC Richardson Barr.**  The assets for sale have current net production of 1,710 boepd (98% oil) from 54 vertical wells occupying 2,120 net acres (2,940 gross, 98% HBP) in three contiguous blocks located primarily in Andrews Co., Texas.

More than two-thirds of that output has been added since the end of 1Q13 via 22 new wells drilled by Capstone's one-rig program, which is currently targeting the San Andres and Glorieta.  This drilling program has demonstrated downspacing performance and repeatable development on the acreage.  Recent standout vertical IP rates include 555 bopd in the Lower Glorieta C, 164 bopd in the San Andres and 249 bopd in the Wolfcamp.  Offers are requested by July 10.

### Redbud markets low-decline Arkoma Basin gas properties

In a strategic move that will shift its focus to the Permian Basin, **Redbud E&P** has retained **E-Spectrum Advisors** to sell the majority of its Arkoma Basin gas properties.  Located in Haskell, Latimer, LeFlore, McIntosh and Pittsburg Cos., Oklahoma, the assets for sale provide shallow-decline production with very low water volumes.  April output of 9.7 MMcfed (99% gas, 100% operated) from 477 wells is projected to generate $711,000 of monthly cash flow.

Founded in 2010, Redbud has built up a 70,500-net-acre Arkoma Basin leasehold (78,600 gross) that is 100% HBP and includes a large inventory of drilling locations in the Hartshorne coal at 2,000 ft as well as an active recompletion program in the Jefferson formation at 3,000 ft.  Proved reserves total 82.1 Bcfe (42% PDP).  Also included is over 135 miles of gathering pipeline moving both Redbud and third-party gas for monthly net cash flow of $32,000.

Bids are due July 1.  View **PLS Listing No. PP 5407DV/G** to find out more.

### South Texas conventional gas properties for sale

**MDU Resources** upstream sub **Fidelity E&P** is considering the sale of its operated Tabasco and Texas Gardens fields in Hidalgo Co., Texas as well as multiple non-op properties in Hidalgo and Starr Counties.  The assets near the Mexican border have projected June net production of 17.6 MMcfed (36% oil and NGLs, 77% operated) from 158 wells on 8,240 net acres (10,700 gross, 90% HBP).

Growth opportunities include 94 Vicksburg redevelopment sites and 22 PUD drilling locations targeting the deepest strata of the Vicksburg sand at Tabasco.  Additional stacked-pay opportunities including 24 structural and stratigraphically trapped horizons from the Vicksburg (10,500 ft) up to the shallow Frio (5,500 ft).

Proved reserves total 117.3 Bcfe, of which 48.0 Bcfe is PUD with F&D costs of $1.49/Mcfe.



COTTON
BLEDSOE
TIGHE &
DAWSON, PC
Attorneys at Law

Post Office Box 2776
Midland, Texas 79702-2776
500 West Illinois, Suite 300
Midland, Texas 79701
(432) 684-5782
(432) 682-3672 Fax
www.cottonbledsoe.com

Rick G. Strange • ATTORNEY • (432) 687-8682 • (432) 684-3125 DIRECT FAX • rstrange@cbtd.com

June 19, 2014

Mr. Barry Tranckino
5201 Rockport Way
Edmond, Oklahoma 73013

Dear Mr. Tranckino:

  We have been retained by Bold Energy and have been asked to respond to your letter dated June 9, 2014. We trust you realize that your letter grossly misstates the legal rights and obligations of the parties and that it relies upon contractual rights Seismic Wells conveyed away. It is obvious that your primary purpose is to extort some payment by attempting to subvert Bold Energy's current marketing efforts – especially when one considers your comments about the amount of money you were able to extract from Chesapeake. Please understand that any legal injury you cause Bold Energy will be grounds for future legal action against yourself. We trust that this will be unnecessary.

  Your letter is premised upon the misstatement that you or Seismic Wells has standing to assert contractual rights in the Miller Ranch Participation Agreement dated November 1, 2006 or the Miller Ranch Lease dated June 11, 2001. That is simply incorrect. You individually are not a signatory to the Lease or Participation Agreement. Seismic Wells is not authorized to conduct any business in the State of Texas and it has previously conveyed all rights under the Lease or Participation Agreement to my client.

  Texas law requires a party to have standing before it can assert a contractual claim. *OAIC Commercial Assets, L.L.C. v. Stonegate Vill, L.P.*, 234 S.W.3d 726, 738 (Tex. App.— Dallas 2007, pet. denied). The Lease and Participation Agreement were entered into by Seismic Wells, LLC. Seismic Wells forfeited its right to conduct business in the State of Texas on February 8, 2008. Consequently, it does not have the right to act as an operator for any lease in the State of Texas.

  Even if we ignored Seismic Wells' inability to legally operate or even conduct business in the State of Texas, Seismic Wells has long since conveyed away its contractual rights under the Lease and Participation Agreement. Seismic Wells owned an undivided 21.875% working interest when it entered into the Participation Agreement. Seismic Wells conveyed its interest to

Midland\010869\000035\1409146.1

PLAINTIFF_0180

June 18, 2014
Page 2

"Barry Tranckino and or M.R. Royalty, L.L.C." by Assignment and Bill of Sale dated August 30, 2011. That assignment reserved Seismic Wells interest in the Miller Sprayberry Unit but no other rights or interest. "Barry Tranckino and or M.R. Royalty, L.L.C." assigned the 21.875% interest to Bold Energy II, LLC by Assignment and Bill of Sale dated September 13, 2011. This assignment was also broadly written and did not reserve any contractual rights under the Participation Agreement.

Under Texas law, an assignment is a manifestation by the owner of a right of his intention to transfer such right to the assignee. *Pape Equip. Co. v. I.C.S., Inc.*, 737 S.W.2d 397, 399 (Tex. App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.). Once an assignment is made, the assignee stands in the shoes of the assignor and may assert all rights that the assignor held. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000); *see also Jackson v. Thweatt*, 883 S.W.2d 171, 175 (Tex. 1994) ("[A]n assignee receives the full rights of the assignor ...."). Because the assignment from Seismic Wells to Tranckino and or M.R. Royalty, and their assignment to Bold Energy did not reserve any contractual rights under the Lease or Participation Agreement, those rights – including the right to act as successor operator now belong to Bold Energy.

Your letter makes repeated references to provisions in the Lease concerning successor operations. As noted above, you individually have never had standing to assert any claim under that lease. Seismic Wells has no legal authority to operate in the State of Texas and has assigned away its contractual rights. Many of the other rights you recite in your letter belong to the Lessors. You lack any standing to assert their rights.

Finally, your letter is conspicuously absent of any reference to key provisions in the Operating Agreement. Section 4.2 of the Participation Agreement provides that operations will be conducted pursuant to the Operating Agreement attached at Exhibit C. The Operating Agreement has several resignation provisions. The Agreement provides in Article V.B.1 that "If Operator terminates its legal existence, no longer owns an interest hereunder in the Contract Area, or is no longer capable of serving as Operator, Operator shall be deemed to have resigned without any action by Non-Operators ..." Each of these conditions now exist. Seismic Wells owns no interest in the relevant property and has forfeited its charter.

The Participation Agreement provides that it controls in the event of a conflict between it and the Operating Agreement. Because the Participation Agreement does not speak to an operator's automatic resignation, there is no conflict.

Thus, even if Bold Energy were willing to ignore your lack of an enforceable contractual right, Seismic Wells will be deemed to have automatically resigned the moment it purports to act as operator.

Your letter's final paragraph threatens serious harm to my client's investment in the Lease unless we "negotiate a mutually beneficial arrangement." If legal action ever becomes necessary, your letter will be the first exhibit introduced and this paragraph will be highlighted.

Midland\010869\000035\1409146.1

PLAINTIFF_0181

June 18, 2014
Page 3

Our second exhibit will be your June 11, 2014 email to Joseph Castillo where you bragged about forcing Chesapeake to sell back their $2 million dollar investment for $250,000. Rarely do we see so blatant and clumsy an attempt at extortion. If you take any action that interferes with my client's investment in the Lease or Participation Agreement, o its clearly established interest to market its ownership rights in this asset, you will be held responsible for any and damages caused. I counsel you, therefore, to drop your threats and to avoid any action of interference.

As I indicated in the beginning of this letter, we trust that litigation will be unnecessary. My clients are willing to visit with you about all outstanding issues. Please contact Joseph Castillo at your convenience.

Very truly yours,

COTTON, BLEDSOE, TIGHE & DAWSON

*[signature]* for
Rick G. Strange

RGS/sm

**From:** Joseph Castillo[joseph.castillo@boldenergy.com]
**Sent:** Wednesday, April 23, 2014 7:06 PM
**To:** Barry Tranckino (barrytr@earthlink.net) <barrytr@earthlink.net>
**Subject:** Info on Marketing

Barry,

I have been talking with Lantana Energy Advisors out of Houston regarding marketing Bold's and Sinclair's interests in Borden-Garza Counties.  Sinclair is considering joining our effort to find a good buyer who will develop these assets, and they are evaluating the attached engagement letter.  I successfully used Lantana late in 2012 to market our Tex-Mex properties on the Central Basin Platform in which we made a very good deal with Limerock Resources.  Let me know if you would be interested in participating in this process for your interests in the Believer Prospect.

I am meeting with Apache next week as well to discuss their feelings regarding this area.

Regards,
Joe

**Joseph L. Castillo**
**President**

**www.boldenergy.com**
**600 N Marienfeld STE 1000**
**Midland, Texas  79701**
**(O) 432-686-1100**
**(C) 432-230-0202**



**Decker Jones**
ATTORNEYS AND COUNSELORS

Decker, Jones, McMackin, McClane, Hall & Bates, PC
801 Cherry Street, Unit #46
Burnett Plaza, Suite 2000
Fort Worth, Texas 76102
817.336.2400 | 817.336.2181 (Fax)
www.deckerjones.com

Raymond B. Kelly III
rkelly@deckerjones.com

June 20, 2014

*Via First Class Mail*
*Via Certified Mail*
*Via E-Mail*
Mr. Barry Tranckino
5201 Rockport Way
Edmond, Oklahoma 73013

Dear Mr. Tranckino:

This firm represents Sinclair Oil & Gas Company in connection with the Miller Ranch Lease dated June 11, 2001 ("Lease"), the Participation Agreement dated November 1, 2006 ("Participation Agreement") and related assignments. Please direct all future correspondence regarding this matter to our Firm. We are in receipt of your June 6, 2014 and June 9, 2014 letters and this letter constitutes our response on behalf of Sinclair to the assertions made in those letters.

You assert a number of rights and duties claimed to have been reserved and/or to be owed to you under the Lease and the Participation Agreement. What your letter fails to recognize and what we trust our response will make clear is that you, individually, have no rights under the Lease or the Participation Agreement. You were not a signatory to either the Lease or the Participation Agreement. Any rights held or duties owed under those instruments belong to the Parties to the same. Notwithstanding, in an attempt to articulate Sinclair's position and to reach an amicable resolution, we will address the points raised in your letters. It is our belief this correspondence will adequately address each point.

You state that the Lease and Participation Agreement prohibit the transfer of operations by Sinclair to a third party; a statement with which our client disagrees. Section 6 of the Lease provides in pertinent part that "Should Lessee assign any part of its interest in any tract constituting part of the leased premises to anyone other than Ricks Exploration, Inc. Lessee shall reserve the right operate the leased premises . . .". Not only did your predecessor in interest, Seismic Wells, LLC, not reserve or retain any rights to operate the Lease, but the lessors in Section 2 of their Consents to Assignment and Change of Operator – Estoppel Certificate expressly consented to the substitution of Sinclair as operator of the Leased Premises in place of Seismic. Moreover, by reason of the assignments of its interest in the Lease to Sinclair, Sinclair is substituted as Lessee for all purposes under the terms and provisions of the Lease. You can acquire no greater rights than Seismic which owns none in this respect. The assignments from Seismic Wells to Sinclair covering an undivided 53.125% interest in the Lease were made incident to the Participation Agreement and as indicated above, nothing in the Lease prohibits Sinclair's assignment of the right to operate the Lease.

PLAINTIFF_0184

Mr. Barry Tranckino
Page 2
June 20, 2014

Having assigned all of your leasehold interest to Sinclair and others, save and except a 21.8750% working interest in 200 acres from the surface to 5700 feet as described in the Miller Spraberry Unit dated October 7, 2008, Sinclair is substituted as the Lessee under the Lease with all the rights previously held by the assignor. Once an assignment is made, the assignee stands in the shoes of the assignor and may assert all rights that the assignor held. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417 (Tex. 2000). Neither you, MR Royalty, LLC nor Seismic Wells own any leasehold interest nor residual rights in the Lease. In connection with this same matter and contrary to the assertions made in your letters and prior correspondence, Sinclair may assign all of its interest in that Lease including operations, certainly without your consent and even without the Lessor's consent, so long as the assignee countersigns the assignments whereby such assignee "covenants and agrees to comply with and be bound by the terms and provisions of this Lease".

In your letter you reference Seismic Wells' exclusive right to assume operations of the leases. Section 9.4 of the Participation Agreement states "[S]hould SOG sell, transfer, or otherwise dispose of its interest in the leases, Seismic Wells shall have the exclusive right to assume operations of the Leases." Your position appears to be that upon such sale or disposition you intend to exercise your exclusive right to be successive operator of the Lease. Pursuant to the Assignment and Bill of Sale from Seismic Wells to Sinclair dated November 1, 2006, Seismic Wells assigned and conveyed to Sinclair not only its right, title and interest to the leases but also any "contracts" which pertain to operations conducted on the leases. It is Sinclair's position that Seismic Wells' exclusive right to assume operations was assigned to Sinclair since such right arises from a "contract" which pertains to operations conducted on the leases. Notwithstanding, even if Seismic Wells were to have retained the exclusive right to assume operations, Seismic Wells forfeited its right to conduct business in the State of Texas on February 8, 2008. Not being a party to the Participation Agreement, you have no rights thereunder, specifically including the right to assume operations.

Notwithstanding their designation in Section 3 of the Participation Agreement, the Parties, specifically including Sinclair, did not obligate themselves to drill all nine wells. These were not truly obligation wells. No party was granted a carried interest which might be forfeited in the event a well was not drilled. No penalty was imposed by the Parties for failure to drill any well. Nor was a liquidated damage provision included in the agreement should any well not be drilled. To the contrary, Section 3.1 states that "SOG is obligated to fund the drilling, and completing and equipping, *if successful*, of the remaining six (6) oil and gas wells on the Leases" (emphasis added). The initial wells were not particularly successful. Further, Section 3.3 contemplates that Sinclair shall not drill ahead but rather cease operations and evaluate after the initial wells were drilled. It was at that point that all the Parties collectively agreed to defer indefinitely the drilling of any additional and evaluate the results of the Miller Spraberry Water Flood. This agreement among the Parties served to orally modify the Participation Agreement. While Section 14.3 of the Participation Agreement prohibits oral modification, it is well established under Texas law that oral modification is allowed *even though the original contract provides it can be modified only by a written agreement. Robbins v. Warren*, 782 S.W.2d 509 (Tex. App. Houston 1st Dist. 1989); *Mar-Lan*, 635 S.W.2d at 855 (emphasis added). By reason of the foregoing, Sinclair is under no obligation to drill the remaining two wells.

As you are well aware, the primary term of the Lease does not expire until June 11, 2021. So long as the Lessee has drilled a well prior to the expiration of the primary term, the Lease

Mr. Barry Tranckino
Page 3
June 20, 2014

may be held by payment of the annual rental in the amount of five dollars per acre then covered by the Lease. A Lessee is not obligated to drill a well and an oil and gas lease may be held during the primary term without drilling a well or otherwise developing the premises so long as payments of the annual rentals are made. *Coats v. Brown*, 301 S.W.2d 932, 934-35 (Tex. Civ. App. Texarkana 1957).

We remain available to discuss any of these matters and look forward to a prompt resolution which will enable both Sinclair and Bold Energy to market their interest for the mutual benefit of all, specifically you and your overriding royalty interest in the premises. Your override has little, if any, value without development and it is the intent of our client to secure development of the Lease by assigning the same to a larger company with the resources to do so.

While it is Sinclair's hope that we can reach an amicable resolution, should you take any action that interferes with Sinclair's rights under the Lease or Participation Agreement including its plan to market its interests in the Lease, we will be compelled to pursue legal action against you for any and all damages which may be incurred by our client by reason of your actions. We believe this correspondence adequately addresses the issues presented in your letter.

Very truly yours,

*RB Kelly*

Raymond B. Kelly, III

RBK/dgt
cc: Marilyn Haberstick
    David Donegan

10381.11001/387695

PLAINTIFF_0186