IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| SEISMIC WELLS, LLC,<br>and BARRY TRANCKINO,<br><br>        Plaintiffs,<br><br>v.<br><br>ROSS B. MATTHEWS, SINCLAIR<br>OIL CORPORATION, THE SINCLAIR,<br>COMPANIES, AND SINCLAIR OIL<br>and GAS COMPANY,<br><br>        Defendants. | § § § § § § § § § § § § § | Case No. 5:15-cv-00148-C<br><br>JURY TRIAL DEMANDED |

## JOINT PRETRIAL ORDER

Pursuant to this Court's Order dated July 9, 2015, Plaintiffs Seismic Wells, LLC

("Seismic Wells") and Barry Tranckino ("Plaintiffs") and Defendants Ross B. Matthews,

Sinclair Oil Corporation, The Sinclair Companies, and Sinclair Oil and Gas Company

("Defendants"), submit this Joint Pretrial Order for the Court's consideration:

1. **Summary of the Claims and Defenses of Each Party**

    A. **Plaintiffs' Contentions:**

Using its registered trade name of "Sinclair Oil and Gas Company" to regularly pay

Seismic Wells, Sinclair 1 entered into an oil and gas participation agreement with Seismic Wells

in May 2005 (the "Initial Participation Agreement"). Mere months later, Sinclair 1 breached the

express terms of the Initial Participation Agreement by assigning all rights under the agreement

(and licensing proprietary seismic data) to a separate legal entity, Sinclair 2. Sinclair 2 then

assigned those same rights to another entity, Sinclair 3, whose formal name was also "Sinclair

Oil and Gas Company." The assignments from Sinclair 1 to Sinclair 2 and Sinclair 2 to Sinclair 3 were not recorded in Texas and, therefore, were concealed from Plaintiffs.

In September and October 2006, Sinclair 3 represented to Seismic Wells that it was the same "Sinclair Oil and Gas Company" that was party to the Initial Participation Agreement in order to obtain a letter of Understanding and a "Replacement Participation Agreement" under which Sinclair 3 would purchase an "additional" interest" in the Miller Ranch Lease as replacement property for its 1031 exchange and assume operations on the leasehold property. In order to abscond with the contractual right to assume operations belonging to Sinclair 1 under the Initial Participation Agreement, Sinclair 3 made affirmative misrepresentations and violated duties to disclose that Sinclair 3 was not the same entity that entered into the Initial contract and performed the acts under that contract in obtaining its rights. As a result, Sinclair 3 concealed Sinclair 1's breach of the Initial Participation Agreement and secured for itself an additional (majority) interest in the Miller Ranch Lease and operations of the Lease for 14 years. As soon as the Replacement Participation Agreement was in effect, Sinclair 1 formally transferred the trade name of "Sinclair Oil and Gas Company" to Sinclair 3. The transfer was filed in Utah on December 1st, 2006, but not in Texas.

In 2014, Seismic Wells discovered that Sinclair 3 was marketing for sale its interests in the Miller Ranch Lease. Seismic Wells sought confirmation that Sinclair would return operations to Seismic Wells upon any disposition or transfer of its interest, pursuant to the terms of the Initial Participation Agreement and the Replacement Participation Agreement. In response, Sinclair 3 wholly and unequivocally repudiated the terms of the Replacement Participation Agreement by asserting that (1) Seismic Wells owned no interest in the Miller Ranch Lease, (2) Sinclair 3 had replaced Seismic Wells as the lessee of the Miller Ranch Lease,

2

and (3) Seismic Wells owned no exclusive right to assume operations under the Lease from inception of the replacement contracts, such that Sinclair 3 could convey the operations certainly without consent from Seismic Wells. Although it knew these statements to be false and rather than admitting to its past fraud and previous breaches of several agreements between the parties, Sinclair 3 decided to post these disparaging statements on a website created to market Sinclair 3's interests to the oil and gas industry at large, where it was viewed by numerous entities who are major players in the oil and gas industry.

This is a textbook case of abuse of the corporate form and fraud. When corporate separateness is inconvenient or against their self-interest, Defendants ignore their corporate form and treat Sinclair 1, Sinclair 2 and Sinclair 3 as *the same* entity. When corporate separateness is beneficial to them, i.e. for purposes of limited liability or tax deferral, Sinclair 1, Sinclair 2 and Sinclair 3 are treated as three separate and distinct entities, capable of making bilateral contracts with each other to carry out a corporate restructuring. Here, Defendants failed to meet their contractual and legal obligations to Plaintiffs and abused their corporate form in order to defraud and disparage Plaintiffs.

### *The Initial Agreement*

In May 2005, Sinclair Oil Corporation (Sinclair 1) and Seismic Wells entered into the Initial Participation Agreement, a long-term, exclusive agreement between Seismic Wells and Sinclair 1 to develop oil and gas interests on the Miller Ranch Lease, which has a primary term expiring 2021. The other working interest owners in the Lease had no rights under the Initial Agreement, but were subject to a Joint Operating Agreement ("JOA") attached to the Initial Agreement. Pursuant to this Initial Agreement, Seismic Wells conveyed to Sinclair 1 a 37.5% interest in the Miller Ranch Lease. Also pursuant to the Initial Agreement, both Seismic Wells and Sinclair 1 had numerous obligations to be carried out over time. Seismic Wells licensed to

3

Sinclair 1 its proprietary 3D seismic data pertaining to the Miller Ranch lease, and Sinclair 1 was prohibited from selling, trading or licensing the seismic data to any third party. Further, Sinclair 1 had the right to assume operations at any time, but was obligated to return operations to Seismic Wells upon any sale, transfer or distribution of Sinclair 1's interest. Sinclair was also obligated to fund the drilling of nine obligation wells.

The Initial Agreement expressly provided that there were no third party beneficiaries and the agreement was not binding on successors or assigns. Sinclair 1 represented and warranted that it was purchasing the interest solely for its own account and not for resale or distribution to others; that it understood Seismic Wells relied upon such representation in agreeing to permit the participation in the project; and that it had the authority to fulfill its obligations and duties as they became due.

During its dealings and negotiations with Seismic Wells, Sinclair 1 used its trade name "Sinclair Oil and Gas Company" and its formal name "Sinclair Oil Corporation" interchangeably. Defendant Ross B. Matthews (Director and Senior VP of Sinclair 2 and President of Sinclair 3), Scott Mayeda (Defendants' in-house counsel), and Peter Johnson (President of Sinclair 1) initialed their approval or signed off on the Initial Agreement and its attendant documents and, therefore, had knowledge that Sinclair 1 was the entity entering into the Initial Agreement with Seismic Wells, and that Sinclair 3 had not.

### *Sinclair's Restructuring*

Just nine months after signing the Initial Agreement, Sinclair 1 conveyed its entire contract rights, interests in the Lease, and other rights under the Initial Agreement, and its licenses (including the seismic data licensed from Seismic Wells under the Initial Agreement) to Sinclair 2 through a General Assignment. The General Assignment was made effective February

1, 2006. Effective the same day, Sinclair 2 conveyed those same assets to Sinclair 3 (formally "Sinclair Oil and Gas Company"). Thus, the interests obtained under the Initial Agreement by Sinclair 1 using the trade name "Sinclair Oil and Gas Company" ultimately came to be held by Sinclair 3 – a separate entity formally utilizing the same name of "Sinclair Oil and Gas Company." Although neither General Assignment was recorded in Borden or Garza Counties public land records (the location of the Miller Ranch Lease), Defendant Ross B. Matthews, Peter Johnson and Scott Mayeda had actual knowledge of the restructuring through their participation in it.

Sinclair 1, Sinclair 2 and Sinclair 3 failed to notify Seismic Wells of the General Assignments or obtain Seismic Wells's written permission to assign Sinclair 1's rights under the Initial Agreement as required by the terms of the Initial Agreement. Notably, although each General Assignment required novation of the assignor's contracts, no Sinclair entity ever sought a novation of the Initial Agreement substituting Sinclair 2 or Sinclair 3 for Sinclair 1. Because it had no knowledge of assignment of rights by Sinclair 1 to Sinclair 2, Seismic Wells continued to send oil production run checks to Sinclair 1 even after the restructuring and Sinclair 1 cashed those checks without complaint, as if nothing had changed. Moreover, after the assignment of rights to the contract by Sinclair 1 to Sinclair 2 then from Sinclair 2 to Sinclair 3, Sinclair 3 continued to pay Seismic Wells on checks from "Sinclair Oil and Gas Company" just as Sinclair 1 had done from inception in 2005, prior to the assignment of rights in the initial contract.

### *The Replacement Agreement*

In September 2006, using its formal name "Sinclair Oil and Gas Company," Sinclair 3 expressly misrepresented itself as the contracting party to the Initial Agreement and procured a Replacement Participation Agreement with Seismic. Despite not being negotiated or executed

by Sinclair 1, the Replacement Participation Agreement purported to replace and supersede the Initial Agreement (a legal impossibility and an attempt to cover up the previous breaches) and allowed Sinclair 3 to obtain operations of and a controlling interest in the Miller Ranch Lease (through the purchase of an "additional" interest), as well as tax deferral benefits through an Internal Revenue Code §1031 exchange.  As a non-party to the Initial Agreement, Sinclair 3 had no right to assume operations of the Lease or to possess or use Seismic Wells's 3D seismic data. Through its fraud, Sinclair 3 wrongfully obtained those rights through the Replacement Agreement without compensating Seismic Wells. Sinclair 3's fraud also concealed Sinclair 1's breach of the Initial Agreement and prevented Seismic Wells from enforcing the Initial Agreement against Sinclair 1 in 2006.

Through Matthews, Mayeda, Johnson and Meehan (Haberstick) – each of whom approved, signed or had actual knowledge of the Replacement Agreement or its attendant documents – the Sinclair entities all had actual knowledge that Sinclair 3 was not the contracting party to the Initial Agreement and that the representations made to Seismic Wells in order to secure the Replacement Agreement were false.  On November 1, 2006, the effective date of the Replacement Agreement, Sinclair 1 formally assigned to Sinclair 3 the use of its trade name "Sinclair Oil and Gas Company."  The assignment was never filed of record in Texas.

### *The June 2014 breach and repudiation*

In June 2014, Sinclair 3 marketed its interest in the Miller Ranch Lease for sale (including the operations it wrongfully obtained through the Replacement Agreement) through Lantana Energy Advisors.  Upon learning that Sinclair was attempting to sell its right to operate the wells on the Lease (and still without any knowledge that it was dealing with Sinclair 3 rather than Sinclair 1), Seismic Wells sought assurances that Sinclair would satisfy its obligation to

return operations to Seismic Wells upon a sale of Sinclair's interest.  Seismic Wells also sought assurance that Sinclair intended to complete the drilling of all nine obligation wells.

In a letter dated June 20, 2014, Sinclair 3 repudiated the essential terms of the Replacement Agreement, including that Sinclair 3 made in exchange for Sinclair 3's operations. Among other things, the letter stated: (1) Seismic Wells owns no leasehold interest nor residual rights in the Lease; (2) Seismic Wells's exclusive right to assume operations was assigned to Sinclair from inception of the replacement agreements; (3) Sinclair could assign the right to operate certainly without Seismic Wells's consent; and (4) "Sinclair did not obligate itself to drill nine wells because "[t]hese were not truly obligation wells."  Sinclair 3 also published these and other disparaging statements on the website created to market its interests to the oil and gas industry at large, in an attempt to discredit Plaintiffs.

After receiving this letter, Barry Tranckino, the sole principal of Seismic Wells, began investigating Sinclair and discovered that the entity operating as "Sinclair Oil and Gas Company" in June 2014 (Sinclair 3) was not the same "Sinclair Oil and Gas Company" with whom Seismic Wells had negotiated and executed the Initial Agreement – and with whom Seismic Wells believed it had negotiated and executed the Replacement Agreement (Sinclair 1). In late 2014-2015, Tranckino discovered the duplicate use of identical corporate names, the inaccuracies in the Borden County land records regarding the chain of title to Sinclair's interest in the Miller Ranch lease, the name registration violations in the Texas Secretary of State and Franchise Tax filings, Sinclair 1's breach of the Initial Agreement, and Sinclair 3's fraud in procuring – and ultimate breach and repudiation of – the Replacement Agreement, including Sinclair's position that it was never obligated to perform the repudiated promises.

1.    **Breach of Contract**

It is undisputed in this case that the Initial Agreement executed by and between Seismic Wells and Sinclair 1 was a valid and enforceable contract and no party has claimed any ambiguity of the terms of the contract.  Plaintiffs performed their obligations under the Initial Agreement, including conveying to Sinclair 1 a 37.5% interest in the Miller Ranch Lease, providing a copy of the 3D seismic data to Sinclair 1, and drilling the first three obligation wells. Sinclair 1 breached the Initial Agreement by (1) failing to notify Seismic Wells of assignments of contractual rights to the Initial Participation agreement from Sinclair 1 to Sinclair 2 and from Sinclair 2 to Sinclair 3; (2) failing to obtain Seismic Wells's written permission to assign the Initial Agreement's confidential terms to another entity; (3) licensing the 3D seismic data to Sinclair 2 and then Sinclair 3; (4) violating its express warranty and representation that it was purchasing the interest for its own account and not for resale or distribution to others; and (5) failing to return operations to Seismic Wells upon its distribution to Sinclair 2.  These breaches caused Plaintiffs damages.

Plaintiffs also assert that Sinclair 3 breached the Replacement Agreement. Defendants do not challenge the validity or enforceability of the Replacement Agreement, nor do they claim any ambiguity.   Seismic Wells performed its contractual obligations under the Replacement Agreement by conveying the "additional" 15.625% interest in the Miller Ranch Lease and by turning operations over to Sinclair 3.   Sinclair 3 repudiated the Replacement Agreement, evidencing a fixed intent to abandon, renounce, and refuse to perform the essential promise of the Replacement Agreement, in its letter dated June 20, 2014, in which it stated that: (1) Seismic Wells owns no leasehold interest nor residual rights in the Lease; (2) Seismic Wells's exclusive right to assume operations was assigned to Sinclair; (3) Sinclair could assign the right to operate

without Seismic Wells's consent; and (4) Sinclair did not obligate itself to drill nine wells because "[t]hese were not truly obligation wells."

Further, Sinclair 3 breached its representation and authority of warranty under the Replacement Agreement because it had no authority to amend or supersede the Initial Agreement. Sinclair 3 also breached the Replacement Agreement by refusing to surrender title and transfer operations of the MSU#2 well to Seismic Wells and instead advertising the well and its operations for sale. Sinclair 3's breach and repudiation of the Replacement Agreement caused Plaintiffs damages. In 2014, Sinclair 3 also breached and repudiated the terms of the Initial Participation Agreement to the extent it was assigned.

### 2.   Common-law Fraud and Fraud by Non-Disclosure[1]

Defendants concealed from Plaintiffs the assignment of Sinclair 1's contractual rights in the Initial Agreement and of the license to Seismic Wells seismic data made on February 1st, 2006, and made material misrepresentations to Plaintiffs concealing causes of action as well as failing to disclose material facts in violation of duties to disclose in order to secure the Replacement Agreement.  Among other things, Defendants misrepresented that Sinclair 3 was the same entity that had negotiated and executed the Initial Agreement with Seismic Wells, and that Sinclair 3, therefore, had a contractual right to assume operations and was acquiring an "additional" interest in the Miller Ranch Lease.  Defendants also made the material misrepresentation that Sinclair 3 was the party to the Initial Agreement for the essential purpose of amending, and then replacing and superseding the initial agreement such that the Replacement Agreement was to be the only agreement among the parties covering the Miller Ranch acreage. Defendants also represented that "Sinclair Oil Corporation" (Sinclair 1) owned a 53.125% interest in the Miller Ranch Lease, and that the contract was made Sinclair Oil and Gas

---

[1] The common law fraud, fraud by non-disclosure and false promises claims are also statutory fraud claims.

Company with Tax Id **0230188 (Sinclair 1's Tax Identification Number). These material misrepresentations were false and were known by Defendants to be false (or at a minimum were made recklessly without knowledge of their truth). Defendants made these misrepresentations with the intent that Plaintiffs rely on them; Defendant's had knowledge that Seismic was continuing to rely on the material Plaintiff did, in fact, rely on the misrepresentations to their detriment, suffering damages.

Defendants had a duty to fully disclose the true chain of title when making a partial voluntary disclosure, and to correct Defendants' material misrepresentations including concealing from or failing to disclose material facts to Plaintiffs, including but not limited to (1) the assignment of contract rights and license of the seismic data from Sinclair 1 to Sinclair 2 to Sinclair 3 and (2) that the Sinclair entity negotiating and executing the Replacement Agreement was **not** the same entity that had entered into the Initial Agreement. The non-disclosed information was material and Defendants knew that Plaintiffs were neither aware of the true facts nor had the equal opportunity to discover those true facts. Defendants' silence was intentional, and Defendants intended Plaintiffs to rely on the silence. Plaintiff relied on the misrepresentations and omissions material to the transaction to their detriment, suffering damages.

### 3.   **Statutory Fraud**

Plaintiffs and Defendants were party to transactions involving real estate, specifically working interests in the Miller Ranch oil and gas lease. During these transactions, as set forth above, Defendants concealed material facts and made misrepresentations of fact and/or false promises and/or benefitted by not disclosing that the representations were false. Defendants knew these representations and promises were false and made them to induce Plaintiffs to enter

into the Replacement Agreement. Sinclair 3's false promises made with no intent to perform accrued in June of 2014 when the promises were breached and repudiated including by Sinclair 3's express communications that Sinclair 3 was never obligated to perform the essential promises from the inception of the Replacement Agreement, which Sinclair 3 authored. Plaintiffs relied on these misrepresentations, omissions and false promises that were material to the transaction to their detriment and sustained damages.

Defendants knew that Sinclair 1 obtained certain rights via the Initial Agreement, assigned those rights to Sinclair 2, then made materially false representations in the Replacement Agreement including concealing from or failing to disclose material facts including but not limited to (1) the assignment of contract rights and license of the seismic data from Sinclair 1 to Sinclair 2 to Sinclair 3 and (2) that the Sinclair entity negotiating and executing the Replacement Agreement was **not** the same entity that had entered into the Initial Agreement. The false statements were material and Defendants knew that Plaintiffs were neither aware of the true facts nor had the equal opportunity to discover those true facts. Defendants' silence and/or false statements were intentional, and Defendants intended Plaintiffs to rely on the silence. Defendants also made the material misrepresentation that the purpose of the Replacement Agreement was to reiterate the terms of the Initial Agreement and include signatures from the non-operating interest owners for the sake of completeness. Defendants also represented that "Sinclair Oil Corporation" (Sinclair 1) owned a 53.125% interest in the Miller Ranch Lease. These material misrepresentations were false and were known by Defendants to be false (or at a minimum were made recklessly without knowledge of their truth). Defendants made these misrepresentations with the intent that Plaintiffs rely on them; Plaintiffs relied on these

misrepresentations, omissions violating duties to disclose, and false promises that were material to the transaction to their detriment and sustained damages.

### 4.   <u>Conspiracy</u>

Defendants engaged in a civil conspiracy aimed at concealing the existence of the assignment of contract rights as well as use of the seismic data that was assigned from Sinclair 1 to Sinclair 2 to Sinclair 3, concealing Sinclair 1's breach of the Initial Participation Agreement, and misrepresenting the true identity of the entity party to the Replacement Agreement. Defendants had a meeting of the minds to accomplish their objectives. The misrepresentations in the Replacement Agreement and its attendant documents, misrepresentations in numerous Texas Secretary of State filings by all three corporate Defendants, failure to file the General Assignments in Borden and Garza Counties, failure to expressly notify Seismic of the General Assignments, and the intentional silence by each of the conspirators were overt acts designed to produce the planned result of the conspiracy—to conceal Sinclair 1's breach of the Initial Agreement, to obtain for Sinclair 3 the operations of the Miller Ranch lease (a legal right belonging only to Sinclair 1 under the Initial Agreement), to secure a tax deferral for Sinclair 3 through an IRS Tax Code §1031 Exchange; and, to permanently defraud Seismic Wells of its exclusive right to operate the Miller Ranch Lease, without which Defendants could not seek to capitalize and profit on the value of that right through Sinclair 3's 2014 repudiation of Seismic's right to operate the wells and Sinclair 3's act of attempting to sell the operations of those wells.

### 5.   <u>Business Disparagement</u>

Defendants made disparaging statements about Plaintiffs, which statements Defendants knew to be false, in order to publicly disparage Plaintiffs. These disparaging statements were made with malice and without prejudice and published in a public forum where they were

viewed by numerous oil and gas entities who are key players in the oil and gas industry. As a result, Plaintiffs suffered special damages.

### 6.    Involvement and Liability of All Defendants

Defendants were co-conspirators and knowingly participated in the activities alleged as part of their own enterprise, from which each Defendant received financial benefit.

### 7.    Causation

All of Defendants' alleged acts and omissions were a producing and/or proximate cause of damages to Plaintiffs.

### 8.    Damages

Plaintiffs seek actual damages in connection with all causes of action asserted in this matter, including but not limited to lost profits to which Plaintiffs would have been entitled had the participation agreements been performed as promised and no fraud occurred. Plaintiffs will offer testimony from Barry Tranckino and expert testimony as to their actual damages. Plaintiffs also seek actual and/or special damages, including but not limited to the pecuniary loss to Plaintiffs' economic interests, resulting from Defendants' business disparagement. Finally, Plaintiffs seek the recovery of attorney's fees, deposition costs, and expert witness costs as provided by Tex. Civ. Prac. & Rem. Code §38.001 and pursuant to their claim for statutory fraud.

### 9.    Exemplary Damages

Plaintiffs also seek exemplary damages based upon Defendants' fraud, statutory fraud, conspiracy and business disparagement.

13

### 10.     Joint and Several Liability

Defendants are jointly and severally liable because they are co-conspirators and joint tortfeasors.

### B.     Defendants' Contentions:

1.     Sinclair contends that all of Seismic Wells's claims fail because Seismic Wells cannot meet its burden of proof for at least one element for each cause of action.

2.     Seismic Wells's claims against Sinclair 1 for breach of the Initial Participation Agreement fail, among other reasons, because: (1) the Agreement did not preclude Sinclair 1 from assigning its interest in the Miller Ranch lease, nor did it require Sinclair 1 to get Seismic Wells's pre-approval or provide notice; (2) Sinclair 1 did not sell, trade, or license the seismic data; and (3) Seismic Wells cannot show that any alleged breaches by Sinclair 1 caused it any recoverable damages.[2]

3.     Moreover, even if Seismic Wells could prove each element of these claims—and it cannot—it still cannot recover because: (1) Sinclair 1's purported breach was excused when Seismic Wells agreed to a novation of the Initial Participation Agreement with an assignee (Sinclair 3); and (2) Seismic Wells's claims are time-barred.

4.     Seismic Wells's claims against Sinclair 3 for breach of the Replacement Participation Agreement fail, among other reasons, because: (1) Sinclair 3 did not repudiate the Agreement as to any right maintained by Seismic Wells; (2) Seismic Wells waived its alleged right to require Sinclair 3 to drill additional wells on the Miller Ranch lease; (3) Seismic Wells sold its right to require additional drilling of wells and subsequent-right-to-operate provisions in

---

[2] As Sinclair explained in its Response to Plaintiff's Motion for Summary Judgment, Seismic Wells did not assert any claims against any Sinclair entity for a purported sale, trade, or license of Mr. Tranckino's seismic data. As a result, this Court should not permit Seismic Wells to present this claim to the jury.

2011; and (4) Seismic Wells cannot show that any alleged repudiation caused it any recoverable damages.

5.      Seismic Wells's fraud-based claims fail, among other reasons, because Seismic Wells cannot prove that: (1) several of the defendants made *any* representations to it; (2) any inaccurate statements were material; (3) any defendant knew any statements were false at the time they were made or that anyone made them recklessly without knowledge of their truth at the time they were made; (4) any defendant made or failed to make any statement that induced Seismic Wells to take any action that it would not have taken otherwise; (5) Seismic Wells actually or justifiably relied on any inaccurate statements; and (6) any purported misrepresentations caused Seismic Wells any recoverable damages. Moreover, even if Seismic Wells could prove each element of its fraud-based claims—and it cannot—it still cannot recover because its claims are time-barred.

6.      Seismic Wells's fraud-based claims against Mr. Matthews fail the same reasons its fraud-based claims fail against the other Sinclair defendants.  In addition, Seismic Wells's fraud-based claims against Mr. Matthews fail, among other reasons, because Seismic Wells cannot prove that: (1) Mr. Matthews acted in his individual capacity; and (2) Mr. Matthews directed anyone to make, or knew that anyone made, any inaccurate statements.

7.      Seismic Wells's conspiracy claim fails for all the reasons that its underlying claims fail. Moreover, the conspiracy claim fails because no defendant made an agreement with another defendant to defraud Seismic Wells.  And, even if such an agreement had been made (and it was not), no defendant took any steps in furtherance of such an agreement.  Finally, no purported agreement between two of more defendants caused Seismic Wells any recoverable damages; and, in any event, Seismic Wells's conspiracy claim is time-barred.

8.      Seismic Wells's business disparagement claim fails, among other reasons, because it cannot prove that: (1) any defendant published any disparaging statements about Seismic Wells; (2) any defendant published any false statements about Seismic Wells; (3) any defendant either knew the alleged disparaging statement was false or acted recklessly with regard to whether it was false; (4) the alleged disparaging statement played any role, let alone a substantial role, in inducing others not to do business with Seismic Wells; and (5) Seismic Wells experienced a specific pecuniary loss as a result of an alleged publication of a disparaging statement.

9.      Mr. Tranckino's business disparagement claim fails for the same reasons Seismic Wells's business disparagement claim fails.      In addition, Mr. Tranckino's business disparagement claim fails, among other reasons, because he is not legally permitted to assert a business disparagement claim as an individual.

10.      Finally, in addition to the fact that Seismic Wells cannot meet its burden on any of its claims that are a prerequisite for exemplary damages (including, but not limited, to its burden to prove compensatory damages), Seismic Wells cannot recover exemplary damages, among other reasons, because Seismic Wells cannot prove any fraud, malice, or disparagement, or any intentional misconduct of any sort, by clear and convincing evidence.

**2.      Statement of Stipulated Facts**

The parties expect to file a list of stipulated facts as the meet and confer process continues.

**3.      An Estimate of the Length of Trial**

The parties estimate the length of the trial will be 5-7 days, but expect to refine their estimate as the meet and confer process proceeds.

**4.      List of Any Additional Matters that Might Aid in the Disposition of the Case**

The parties agree to provide 24-hour notice to the other side of each witness and non-pre-admitted exhibits they plan to use with such witnesses. Both sides will file their respective exhibit lists, deposition designations, and proposed jury instructions on February 13, 2017. However, as the parties further participate in the meet and confer process, they plan to prepare: 1) a list of certain exhibits that will be pre-admitted; 2) a set of certain jury instructions and verdict form questions that are agreed upon by the parties; and 3) a set of certain deposition designations that are agreed to by the parties. Neither side will require the other to authenticate documents with a records custodian, but both sides reserve the right to object to particular documents on authenticity grounds if there is a clear reason based on the face of the document. The parties jointly request that a jury charge conference be held at the close of evidence but before closing arguments. In the alternative, the parties jointly request a reasonable period of time to make objections to the Court's final jury instructions and verdict form prior to the time the jury instructions are read to the jury.

SO ORDERED this _17th_ day of February, 2017.

SAM R. CUMMINGS
SENIOR UNITED STATES DISTRICT JUDGE

Dated:   February 13, 2017

Respectfully submitted,

/s/ Gary R. Sorden
Gary R. Sorden
State Bar No. 24066124
Aaron Davidson
State Bar No. 24007080
Tim Craddock
State Bar No. 24082868
Corey Weinstein
State Bar No. 24037685
Mandi M. Phillips
Texas Bar No. 24036117
**KLEMCHUK LLP**
8150 N. Central Expressway
10th Floor
Dallas, Texas 75206
Tel. 214.367.6000
Fax 214.367.6001
gary.sorden@klemchuk.com
aaron.davidson@klemchuk.com
tim.craddock@klemchuk.com
corey.weinstein@klemchuk.com
mandi.phillips@klemchuk.com

**PASSMAN & JONES, P.C.**
Christopher A. Robison
Texas Bar No. 24035720
1201 Elm Street, Suite 2500
Dallas, Texas 75270-2500
(214) 742-2121 Telephone
(214) 748-7949 Facsimile
robisonc@passmanjones.com

**ATTORNEY FOR PLAINTIFFS
SEISMIC WELLS, LLC AND
BARRY TRANCKINO**

/s/ Peter M. Henk
Peter M. Henk
Texas Bar No. 00790861
P. Randall Crump
Texas Bar No. 05186020
Benjamin Walther
Texas Bar No. 24084041
**SHOOK, HARDY & BACON L.L.P.**
600 Travis, Suite 3400
Houston, Texas  77002-2926
Tel.  713.327.8008
Fax 713.227.9508
phenk@shb.com
pcrump@shb.com
bwalther@shb.com

**FIELD, MANNING, STONE,
  HAWTHORNE & AYCOCK, P.C.**
A Professional Corporation
J. Paul Manning
Texas Bar No. 24002521
2112 Indiana Avenue
Lubbock, Texas  79410-1444
Tel. 806.792.0810
Fax 806.792.9148
jpmanning@lubbocklawfirm.com

**ATTORNEYS FOR DEFENDANTS
ROSS B. MATTHEWS, SINCLAIR OIL
CORPORATION, THE SINCLAIR
COMPANIES, AND SINCLAIR OIL
AND GAS COMPANY**

## CERTIFICATE OF CONFERENCE

On multiple occasions, including but not limited to February 13, 2017, counsel for the parties conferred regarding the above Joint Pretrial Order.

/s/ Gary R. Sorden
Gary R. Sorden

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on February 13, 2017, with a copy of this document via the Court's CM/ECF system per Local Rule 5.1(d).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Gary R. Sorden
Gary R. Sorden